# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | |
|---|---|
| REGINA JOYCE SHANES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      3:06-cv-01560-JEO |
| | ) |
| SUNBRIDGE CARE AND REHABILITATION | ) |
| GROUP, INC., LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the court on various motions filed by defendant SunBridge Care and

Rehabilitation Group, Inc., LLC, correctly designated SunBridge Healthcare Corporation d/b/a

SunBridge Care and Rehabilitation for Muscle Shoals[1] (hereinafter "the defendant" or

"SunBridge"). Specifically, before the court are the defendant's motion for summary judgment

(doc. 29) and motions to strike an affidavit and the "Plaintiff's Narrative Summary of Undisputed

Facts" (doc. 35 & 36).

The plaintiff, Regina Joyce Shanes (hereinafter "the plaintiff" or "Shanes"), asserts a

federal civil rights claim that the defendant violated her Fourth Amendment rights and various

state law claims for false arrest and false imprisonment, intentional infliction of emotional

distress, negligence and wantonness.[2] For the reasons set out herein, the court finds that the

defendant's motions to strike are due to be granted in part and denied in part and its motion for

---

[1] The defendant asserts in its Answer that the company is correctly designated as "SunBridge Healthcare Corporation d/b/a SunBridge Care and Rehabilitation for Muscles Shoals" as opposed to "SunBridge Care and Rehabilitation Group, Inc., as asserted by the plaintiff in her Complaint. (Doc. 1 at 1).

[2] The plaintiff asserts her Fourth Amendment claims via 42 U.S.C. § 1983. (Doc. 33 at 8 (hereinafter "Plaintiff's Opp. Brief")).

summary judgment is due to be granted.

## I.   FACTS[3]

This case arises from an incident occurring on February 19, 2004, while the plaintiff was

working for SunBridge.  (Complaint at 2).[4]  In particular, the plaintiff alleges SunBridge violated

her Fourth Amendment rights when it reported suspected patient abuse to the Alabama

Department of Public Health, which led to her arrest and prosecution.[5]

---

[3]The facts set out below are gleaned from the parties' submissions and they are viewed in a light most favorable to the non-moving party.  They are the "facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)."  *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[4]A copy of the plaintiff's complaint is located at document 1.

[5]Such reporting is required by Federal and State law.  Specifically, 42 C.F.R. § 483.13(c), provides in pertinent part:

(c) Staff treatment of residents.  The facility must develop and implement written policies and procedures that prohibit mistreatment, neglect, and abuse of residents and misappropriation of resident property.

(1) The facility must--

(i) Not use verbal, mental, sexual, or physical abuse, corporal punishment, or involuntary seclusion;

(ii) Not employ individuals who have been--

(A) Found guilty of abusing, neglecting, or mistreating residents by a court of law; or

(B) Have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property; and

(iii) Report any knowledge it has of actions by a court of law against an employee, which would indicate unfitness for service as a nurse aide or other facility staff to the State nurse aide registry or licensing authorities.

(2) The facility must ensure that all alleged violations involving mistreatment, neglect, or abuse, including injuries of unknown source, and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency).

(3) The facility must have evidence that all alleged violations are thoroughly investigated, and must prevent further potential abuse while the investigation is in progress.

(4) The results of all investigations must be reported to the administrator or his designated representative and to other officials in accordance with State law (including to the State survey and certification agency) within 5 working days of the incident, and if the alleged violation is verified, appropriate corrective action must be taken.

ALA. CODE § 38-9-8 (1975) provides:

(a) All physicians and other practitioners of the healing arts or any caregiver having reasonable cause to believe that any protected person has been subjected to physical abuse, neglect, exploitation, sexual abuse, or emotional abuse shall report or cause a report to be made as follows:

(1) An oral report, by telephone or otherwise, shall be made immediately, followed by a written report, to the county department of human resources or to the chief of police of the city or city and county, or to the sheriff of the county if the observation is made in an unincorporated territory, except that reports of a nursing home employee who abuses, neglects, or misappropriates the property of a nursing home resident shall be made to the Department of Public Health. The requirements to report suspicion of suspected abuse, neglect, or misappropriation of property of a nursing home resident by an employee of a nursing home shall be deemed satisfied if the report is made in accordance with the rules of the State Board of Health.

(2) Within seven days following an oral report, an investigation of any alleged abuse, neglect, exploitation, sexual abuse, or emotional abuse shall be made by the county department of human resources or the law enforcement official, whichever receives the report, and a written report prepared which includes the following:

a. Name, age, and address of the person.

b. Nature and extent of injury suffered by the person.

c. Any other facts or circumstances known to the reporter which may aid in the determination of appropriate action.

(b) All reports prepared by a law enforcement official shall be forwarded to the county department of human resources within 24 hours.

(c) The county department of human resources shall not be required to investigate any report of abuse, neglect, exploitation, sexual abuse, or emotional abuse that occurs in any facility owned and operated by the Alabama Department of Corrections or the Alabama Department of Mental Health and Mental Retardation.

(d) Notwithstanding the foregoing, the Department of Public Health shall investigate all reports that a nursing home employee has abused or neglected a nursing home resident, or misappropriated the property of a nursing home resident, in accordance with the rules of the State Board of Health and the federal regulations and guidelines of the Medicaid and Medicare programs. The Department of Public Health shall investigate the complaints in accordance with the procedures and time frames established by the agency. A county department of human resources shall not be required to investigate the complaints.

ALA. ADMIN. CODE 420-5-4-.06(2)(f) (2007) (bold added) provides in pertinent part:

Each facility shall develop and implement a policy and procedure to ensure that each resident of the facility is free from abuse, neglect, and exploitation. The facility shall ensure that all staff can demonstrate an understanding of what constitutes abuse, neglect, and exploitation and shall ensure that all staff understands his or her responsibility to immediately report suspected incidents of abuse, neglect or exploitation of a resident to the administrator. When abuse, neglect, or exploitation is alleged or suspected, the facility shall conduct and document a thorough investigation and take appropriate action to prevent further abuse. **All**

3

The plaintiff was attending to Wilhelminia Kimbrough (hereinafter "the patient" or "Kimbrough") while she was under her care on February 19, 2004, at SunBridge.  (Shanes Dep. at 50).[6]  It is undisputed that the plaintiff was assigned to Kimbrough, including bathing, feeding, and attending to her other personal hygiene needs.  During the afternoon of February 19, the plaintiff answered the "call light" activated by Kimbrough.  *Id*. at 52.  When the plaintiff responded to the call, Kimbrough informed her that she needed her diaper changed.  *Id*.  The plaintiff performed the requested service, collected her purse, clocked out, and left the facility as the time for her shift was complete.  *Id*. at 53.

Shortly after the plaintiff left, Kimbrough reported to the medical staff that she suffered physical injury during the time the plaintiff was performing duties on her.  Kimbrough, an elderly resident, told the charge nurse of a painful burning on her right arm and of being handled "rough" and "real hard" by the plaintiff who came to attend to her.  (Faulkner Dec. at ¶ 3).[7]  Kimbrough's

---

allegations and suspicions shall be reported to the Assisted Living Unit of the Alabama Department of Public Health and to the victim's sponsor or responsible family member within 24 hours.  Suspected abuse, neglect, or exploitation of a resident shall be reported to the Department of Huma n Resources or law enforcement in accordance with Code of Ala. 1975, Section 38-9-8.  At any time that a resident has been the victim of sexual assault or sexual abuse perpetrated by a staff member or visitor, local law enforcement authorities shall be immediately notified.

ALA. ADMIN. CODE 420-5-4-.05(1)(b)(3) (2007) (bold added) also provides:

Adult Protective Services Reports.  **Incidents of suspected abuse, neglect, or exploitation shall be reported immediately to the Department of Human Resources or to appropriate law enforcement authorities as required by law, and shall also be reported to the Department of Public Health within 24 hours.**  Such incidents shall be immediately investigated by the facility, and the results of the investigation shall be promptly reported to the Department of Public Health.

ALA. ADMIN. CODE 420-5-4-.05(3)(e)(4) defines physical abuse as "any willful act directed at a resident that is intended to result in or that is likely to result in injury or pain.  Physical abuse includes slapping, pinching, kicking, shoving, and corporal punishment of any kind."

[6]The plaintiff's deposition is located at document 31-2 & 3 (Def. Ex. 1).

[7]Sonya Faulkner's Declaration is located at document 31-4 (Def. Ex. 2).

complaint was reported to the Assistant Director of Nursing, Sonya Faulkner.  Specifically, she

stated that it was reported

> that a tall, slender, African-American CNA fitting Regina Shanes's [sic]
> description came to Mrs. Kimbrough's room to change her diaper.  Mrs.
> Kimbrough informed me the CNA filling Ms. Shanes's [sic] description handled
> her roughly and grabbed Mrs. Kimbrough's right arm and pulled her real hard.
> Mrs. Kimbrough informed me her right arm hurt real bad and was burning.  Mrs.
> Kimbrough also told me the CNA turned her over real fast and she thought she
> was going to roll on the floor because her bed rail was not up.  Mrs. Kimbrough
> said the CNA then turned her over on her back, put her purse on her shoulder, and
> said, "I got to go home."  Mrs. Kimbrough then waited until the CNA was gone
> and turned her call light on.  When the Charge Nurse, Brooke Allard, came to her
> room, Mrs. Kimbrough told her what happened and that her right arm was hurting.
> Nurse Allard then treated Mrs. Kimbrough's upper right arm for a large skin tear
> . . . .

*Id*. at ¶ 3.  Based on Kimbrough's complaint, Faulkner called the plaintiff at home that day and

told her about the allegations.  *Id*. at ¶ 5.  Faulkner further informed the plaintiff that the matter

was being investigated and that she was suspended until a final determination was made.  *Id*.

Faulkner interviewed and obtained written statements from other facility employees,

including Brooke Allard, Jessica Lewis, Vicki Thigpen, Lorikus Lipscomb, and Amanda

Dickerson.[8]  Premised on her interviews, Faulkner found that "Kimbrough had a fresh, bleeding

skin tear on her upper right arm immediately after Ms. Shanes changed her diaper on February

19, 2004."  *Id*. at ¶ 7.  She further concluded that the plaintiff "caused the skin tear on Mrs.

Kimbrough's upper right arm, and [she] failed to report the injury before Ms. Shanes left for the

---

[8]Copies of the statements are located at document 31-6 (Def. Ex. 4).  Lewis stated that she received the initial complaint from Kimbrough, observed the injury, and called Allard who was the Charge Nurse.  (Lewis Interview Record).  She also stated that Kimbrough told her that "she [(the plaintiff)] didn't mean to do it."  *Id*.  Thigpen confirmed Lewis' statement. (Thigpen Interview Record).  Allard stated that when she was called to Kimbrough's room, she observed an "actively bleeding bright red blood, new bruising" on her right arm.  (Allard Interview Record).  Lipscomb stated that when she was making her 3:00 p.m. rounds on the day of the incident, Kimbrough told her "that she had been jerked around by a CNA but she did not know who the CNA was."  (Lipscomb Interview Report).  Dickerson, the charge nurse from the previous night shift, stated that she did not notice anything unusual with Kimbrough the night before the incident.  (Dickerson Interview Record).

day." *Id*.

Faulkner interviewed the plaintiff on February 24, 2004.  She acknowledged that she had changed Kimbrough's diaper and that she then put her purse on her shoulder and told Kimbrough that she was going home.  *Id*. at ¶ 6.  She denied causing the skin tear.  *Id*.

As a consequence of her interviews and investigation, Faulkner "faxed the required 'Abuse and Unusual Occurrences Report' to the Alabama Department of Public Health, along with the statements [she] received" from the various witnesses.  *Id*. at ¶ 8.  The plaintiff's employment was terminated because Faulkner concluded that the plaintiff "caused the skin tear" and "failed to report the injury."  *Id*. at ¶ 9.

Upon receipt of the report by the Alabama Department of Public Health, the Alabama Attorney General's Office also investigated the incident.  The Alabama Attorney General's Office at the conclusion of their investigation requested and obtained a warrant for the plaintiff's arrest.[9]  The plaintiff was convicted on the charge of abuse and neglect filed under ALA. CODE § 38-9-7(e)[10] following a non-jury trial.[11]  However, the case was dismissed when it was appealed

---

[9]Complaint at 4.

[10]ALABAMA CODE § 38-9-7 provides in pertinent part:

    (a) It shall be unlawful for any person to abuse, neglect, exploit, or emotionally abuse any protected person.  For purposes of this section, residence in a nursing home, mental institution, developmental center for the mentally retarded, or other convalescent care facility shall be prima facie evidence that a person is a protected person.  Charges of abuse, neglect, exploitation, or emotional abuse may be initiated upon complaints of private individuals, as a result of investigations by social service agencies, or on the direct initiative of law enforcement officials.

    . . . .

    (e) Any person who recklessly abuses or neglects a person in violation of this chapter, shall be guilty of a Class A misdemeanor if the reckless abuse or neglect causes physical injury.

ALA. CODE § 38-9-7(a) & (e).  Recklessly is defined as follows:

    A person acts recklessly with respect to a result or to a circumstance described by a statute defining

6

to the Circuit Court on the motion to dismiss of the Attorney General.[12]

## II.   THE DEFENDANT'S MOTIONS TO STRIKE

The defendant has filed two motions to strike certain of the plaintiff's submissions in support of her opposition to the defendant's motion for summary judgment.  (Doc. 35 & 36). They will be addressed separately.

In the first motion, the defendant seeks to strike the affidavit of Jeffery Austin that was submitted in the plaintiff's evidentiary submissions in opposition to the motion for summary judgment.  The defendant argues that the plaintiff failed to disclose Mr. Austin as a potential witness in her initial disclosures that were filed with the court.  (Doc. 35 at ¶ 1).  Further, the defendant argues that the plaintiff failed to disclose Austin as a potential witness in her responses to the defendant's interrogatories.  *Id*. at ¶ 2.  Finally, the defendant argues that the affidavit was untimely under the court's discovery deadline.  *Id*. at ¶ 4.  The plaintiff retorts that the affidavit is offered "to rebut the contentions of [the] defense to contradict the assertion that there were no genuine issues of material facts . . . ."  (Doc. 38 at 1-2).

In *Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 161 (11th Cir. 2005), the court stated:

. . . . FED. R. CIV. P. 26(a)(1)(A) provides:

_____

an offense when he or she is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk shall be of such nature and degree that its disregard constitutes a gross deviation from the standard conduct that a reasonable person would observe in the situation. . . .

ALA. CODE § 38-9-2(19).

[11]Plaintiff's Exhibit "G" located at document 34-2.

[12]Plaintiff's Exhibit "H" located at document 34-2.

> Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties: (A) the name . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

> FED. R. CIV. P. 26(a)(1)(A).  Parties also must supplement their Rule 26 disclosures at appropriate intervals.  FED. R. CIV. P. 26(e)(1).  Parties who fail to satisfy these disclosure and supplementation requirements are prohibited, pursuant to FED. R. CIV. P. 37(c)(1), from using the undisclosed evidence "at trial, at a hearing, or on a motion," unless the failure is harmless.  FED. R. CIV. P. 37(c)(1).

It is fair to say that the information from Austin in the affidavit, attesting to the occurrences at the District Court trial of the plaintiff, constituted discoverable information under the Federal Rules. Accordingly, his name should have been disclosed.  Similarly, he should have been identified as a potential witness in the responses to the interrogatories.  However, even if the court were to consider the information contained in the affidavit from Mr. Austin, it would not alter the court's determination on the motion for summary judgment on any claim.

In the second motion to strike (doc. 36), the defendant asserts that the court should strike the plaintiff's "Narrative Summary of Undisputed Facts."  Specifically, the defendant argues that the plaintiff has failed to support her statements of fact with the required references to the record. *Id*. at 2.  By way of example, the defendant notes that her narrative states that Kimbrough "was suffering from senile dementia at the time of the incident and, [sic] died shortly before the filing of this lawsuit."  *Id*. at ¶ 3.  In response, the plaintiff states that her brief is "in substantial compliance with the pre-trial order."  (Doc. 38 at ¶ 7).  Additionally, she states that any deviation from the court's order was merely an oversight.  *Id*. at ¶ 8.

The plaintiff's "Narrative Summary" is not in compliance with the court's order and, therefore, is due to be struck.  However, because the non-compliance was an oversight, the court

has considered the same to the extent the representations therein are supported by the record.  To

the extent the assertions are not adequately supported, they are struck.[13]

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the declarations, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986).  The party asking for summary judgment "bears the initial burden

to show the district court, by reference to materials on file, that there are no genuine issues of

material fact that should be decided at trial.  Only when that burden has been met does the burden

shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that

precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142

(1970).

The movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of her case on which she bears the ultimate burden of proof.  *Celotex*, 477 U.S. at

322-23; *see* FED. R. CIV. P. 56(a) and (b).  Once the moving party has met her burden, Rule 56(e)

"requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the

---

[13]The defendant's citation to Kimbrough's mental state at the time of the instant events is a good example of the difficulty presented when record citations do not accompany a factual assertion.  Although the plaintiff asserts that Kimbrough was suffering from senile dementia at the time of the incident, the record indicates that she was able to perceive the events at issue in this case.  The July 7, 2004 Interview Report of Allison Brooke Allard in the Attorney General's file states that "LPN Allard advised that Ms. Kimbrough is alert and is oriented. . . ." (Def. Evid. Sub. at Ex. 4).  Similarly, the plaintiff stated in her deposition that Kimbrough was coherent on the date of the incident in question.  (Shanes Dep. at 56).

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may

not merely rest on the pleadings.  *Id*.

After a motion has been responded to, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are

irrelevant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at

249.

## IV.   DISCUSSION

### A.   Violation of Fourth Amendment

The plaintiff asserts that the defendant violated her Fourth Amendment right to be free

from unreasonable searches and seizures premised on a claim that she was wrongfully arrested,

handcuffed, and detained without probable cause.[14]  (Def. Brief at 12).[15]  SunBridge counters in

its motion for summary judgment that the plaintiff has not and cannot show that it is a state actor

to establish liability.  *Id*.  The plaintiff retorts that SunBridge is responsible because it acted in

concert with state officials.  (Plaintiff's Opp. at 12-13).  In support of her contention, the plaintiff

cites *Smith v. Brookshire Brothers, Inc*., 519 F.2d 93 (5th Cir. 1975), *Dahl v. Akin*, 630 F.2d 277

---

[14]In her opposition brief (document 33 (hereinafter "Plaintiff's Opp.")), the plaintiff also asserts that her Fourth Amendment claim is also based upon an assertion of malicious prosecution.  (Plaintiff's Opp. at 10).

[15]The defendant's brief is located at document 30.

(5th Cir. 1980), and *Scott v. Dixon*, 720 F.2d 1542 (11th Cir. 1983).

In order to establish liability, the plaintiff must show that the § 1983 violation was (1) committed by a person acting under color of state law and (2) that she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)).  Additionally, because the defendant is not generally acting under color of state law, the plaintiff must allege and show that the state actor and the defendant herein somehow were acting in concert.  *Smith*, 519 F.2d at 94 (the plaintiff must show that the defendant and law enforcement have "a customary plan whose result was the detention in the present case." ) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).

Although the plaintiff seeks to recover under § 1983, she offers no evidence that SunBridge detained, restrained, or confined her, unlawfully or otherwise, in any manner under the Fourth Amendment.  Similarly, she has not shown any concert of action or customary plan that resulted in her arrest and detention in this case.  The undisputed facts clearly demonstrate that SunBridge investigated Mrs. Kimbrough's complaint.  Thereafter, it reported the matter and its findings of suspected abuse pursuant to state and federal requirements to the Alabama Department of Public Health.  Following receipt of the report by the Department of Public Health, the Alabama Attorney General's Office began an investigation into the matter.

As a consequence of its review, Senior Special Agent Gerald Shockley with the Attorney General's Office applied for an arrest warrant for the plaintiff on the allegation that she recklessly abused or neglected Mrs. Kimbrough.  (Shanes Dep. at Ex. 4).  A warrant was issued.  *Id*. at Ex.

11

6.  The case was prosecuted in the District Court and ultimately dismissed on appeal following her initial conviction.

Absent a showing that the defendant was a state actor or acting in concert with such a person or entity, the plaintiff is entitled to no relief on this claim.  The plaintiff's reliance on *Smith*, *Dahl*, and *Scott* is misplaced.  In *Smith*, the appellate court upheld the trial court's determination that store employees could be held liable under § 1983 where the police had detained a purported shoplifter and an accomplice without independently establishing that there was probable cause to do so, without a complaint having been filed, and without knowing sufficient facts to believe that a crime had been committed.  *Smith*, 519 F.2d at 94.  The court further noted that "they [(the law enforcement officers)] depended on the conclusory assessment of the store officers" who, "in turn, did not have probable cause."  *Id*.  Affirming the trial court, the Fifth Circuit noted that the trial record supported the lower court's factual finding that the arrests, "were made without the filing of a valid complaint and without any investigation, **all of which was pursuant to said preconceived plan**."  *Id*. (bold added).

In *Dahl*, the plaintiff asserted a claim under § 1983 that his daughter and her husband fraudulently used various court proceedings to have the plaintiff committed to a mental health facility and his property taken from his control under state law.  The trial court dismissed the action, finding that the defendants were not acting under color of law.  Affirming the dismissal, the Fifth Circuit found that, although the defendants' actions may have been tortious under state law, they were not acting "under color of" state law.  *Dahl*, 630 F.2d at 281.

In *Scott*, the plaintiff sued a defendant creditor who had obtained a warrant for his arrest on the offense of endangering a security interest in violation of Georgia law.  The defendant

12

personally held the warrant for five months and then sought police assistance in having the

plaintiff arrested when he failed to pay him a sum that was outstanding.  Ultimately, the charge

was dismissed by the trial court.  On appeal, the Fifth Circuit stated that the defendant creditor

> clearly acted in conjunction with and obtained significant aid from state officials.
> The evidence permits a conclusion that [the defendant creditor] conspired with
> [the judicial official] to obtain the warrant, acted in bad faith in securing it, and
> used his prior position to procure its execution.  The [plaintiff] in response to the
> motion for summary judgment asserted that [the defendant creditor] and others
> knowingly misused state procedure in violation of [the plaintiff's] civil rights and
> that the procedure itself was invalid.  Whether [the defendant creditor] was acting
> as Commissioner or as a private citizen, the district court erred in finding an
> absence of genuine issues of material fact in light of *Lugar* and *Morrison*,
> *supra*.[16]  On the record before us in light of the controversy in the evidence, we
> cannot say as a matter of law that [the defendant creditor's] actions were
> completely outside the purview of section 1983.  We emphasize that we in no way
> intimate that every affiant to a criminal warrant engages in state action of a
> constitutional dimension.  *Accord Lugar v. Edmondson Oil Co.*, 457 U.S. at 942
> n. 23, 102 S. Ct. at 2757 n. 23.  Nor do we suggest that [the defendant creditor] is
> not liable under section 1983.  We merely find that summary judgment was
> improvidently granted.

*Scott*, 720 F.2d at 1546.

Shanes' situation is factually distinguishable from each of the foregoing cases.  In the

present case, unlike *Smith*, there is no showing whatsoever that there was any type of

preconceived plan to support a finding that the defendant was acting in concert with a state actor.

In both *Dahl* and *Scott*, the defendant affirmatively was using the legal system to advance a

personal situation in a clearly inappropriate way.  The defendant in this case merely was

complying with state and federal regulations that required the investigation and reporting of

possible resident abuse.  The defendant's adherence to state law does not make the conduct of its

---

[16] *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) (private party's joint participation with state officials in the seizure of disputed property) and *Morrison v. Washington County, Alabama*, 700 F.2d 678 (11th Cir. 1983) (police removing patient from a hospital).  These cases held that a private party acting pursuant to state law or in conjunction with state officials may, in certain circumstances, incur § 1983 liability.

employees "state action" for purposes of a § 1983 claim.  Although the defendant did report the

incident to the Department of Public Health as it was required to do, that does not rise to an act

under color of state law.  Thereafter, the matter was reviewed by the Department and forwarded

to the Attorney General's Office for further review and a prosecution decision.[17]  Additionally,

the defendant's conduct is further removed from state action by the fact that Shockley then

applied for and obtained a warrant for the plaintiff's arrest from a neutral judicial officer.[18]

Accordingly, the defendant's motion for summary judgment is due to be granted on this claim.[19]

　　　　To the extent that the plaintiff premises her § 1983 claim on an assertion of malicious

prosecution (see Plaintiff's Opp. at 10), the court finds that it fails for additional reasons.  In

*Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003), the Eleventh Circuit Court of Appeals held

---

[17]The "Caption Summary Report" prepared by Senior Special Agent Shockley notes that his

investigation was predicated upon information received from the Department of Public Health based upon their investigation wherein it appeared CNA Regina Shanes, Sunbridge [sic] Care and Rehabilitation, Muscle Shoals, AL had treated resident Wilhelmina Kimbrough in a reckless, negligent abusive manner when caring for Ms. Kimbrough which care resulted in a 4 inch skin tear to Ms. Kimbrough's right arm. . . .

(Doc. 31, Def. Ex. 4 at July 15, 2004 Caption Summary Report).

[18]Although the plaintiff alleges in her complaint that the defendant "acting through the State of Alabama had placed a warrant for [her] arrest," there is nothing suggesting that the Special Agent was acting at the direction or behest of the defendant. (Complaint at ¶ 14).

[19]The court further finds that even if the plaintiff had demonstrated that some individual associated with the defendant was acting under color of state law, there is no basis for holding the corporate defendant liable.

　　　　It is well established that there can be no respondeat superior liability for § 1983 claims.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004).  In other words, the named defendant in a § 1983 suit may be held liable only for that defendant's own unconstitutional conduct, not that of subordinates or employees.  *Monell*, 436 U.S. at 694, 98 S. Ct. 2018.  Therefore, the question is whether the [municipal entity] itself violated [the plaintiff's ]constitutional rights.

　　　　A municipality may be found liable under § 1983 only if the violation of the plaintiff's rights is attributable to a municipal policy or custom. *Id.* Thus, [the plaintiff] is entitled to relief only if (1) his Fourth Amendment rights were violated, and (2) the violation was attributable to a policy or custom of the [defendant]. *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992); *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 568 (11th Cir. 1997).

*Williams v. Town of White Hall, Alabama*, 450 F. Supp. 2d 1300, 1303 (M.D. Ala. 2006).

that "the constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  The plaintiff has offered nothing to show that the defendant instituted the criminal proceeding or acted with malice.  To the contrary, the undisputed evidence shows that the matter was investigated by the defendant, a report was made to the necessary authorities, and the state officials acted without any further influence from the defendant.  The Office of the Attorney General initiated the prosecution when its Special Agent applied for the arrest warrant for the plaintiff.  By this juncture, the plaintiff was substantially removed from the activity in that the Department of Public Health and the Office of the Attorney General had investigated and reviewed the claims.  This simply does not constitute the commencement of criminal proceedings for purposes of § 1983 liability.  *See Crown Cent. Petro. Corp. v. Williams*, 679 So. 2d 651, 655 (Ala. 1996), *citing Pannell v. Reynolds*, 655 So. 2d 935, 938 (Ala. 1994) (quoting *Alabama Power Co. v. Neighbors*, 402 So. 2d 958,  962 (Ala. 1981)) (in a malicious prosecution case, "a person does not instigate an arrest by merely providing information that results in another's arrest, unless the person acts in bad faith (*i.e.*, lacks any reasonable basis upon which to accuse another of a crime")).

Additionally, there is no evidence of malice on the part of the defendant or its agents. The court concludes, therefore, that summary judgment is due to be granted for these additional reasons on this aspect of the plaintiff's § 1983 claim.

**B.      False Arrest and False Imprisonment**

The defendant next asserts that a summary judgment is due to be granted on the false

arrest and imprisonment claim (Count Two) because the plaintiff has failed to demonstrate she

was  restrained, threatened, or otherwise ordered by the defendant.[20]  (Def. Brief at 16).

Specifically, the defendant correctly states that false imprisonment "consists [of] the unlawful

detention of the person of another for any length of time whereby he is deprived of his personal

liberty."  ALA. CODE § 6-5-170 (1975).  (Def. Brief at 16).  Yet, the defendant argues, the

plaintiff testified in her deposition that no individual at SunBridge restrained her in any physical

manner, administered handcuffs, or confined her to a room under lock and key.  *Id*. at 18 (citing

Shanes Dep. at 100-01).

The defendant further states that "it is undisputed that no one employed by SunBridge

signed the criminal complaint against Shanes, or the warrant for her arrest."  *Id*. (citing Plaintiff's

Dep. at 82-85, 110).  Instead, SunBridge states that the Alabama Attorney General's Office made

the decision to prosecute Shanes for the February 19, 2004 incident involving Mrs. Kimbrough

after receiving information from the Department of Public Health and conducting its own

thorough investigation.  *Id*. (citing Shanes Dep. at 77, 86, 107-08 and Ex.4 attached thereto).

In *Williams*, 679 So. 2d 651, a false imprisonment case, the Alabama Supreme Court

stated:

> . . . . We recognize, as the plaintiff contends, that persons other than those
> who actually effect an arrest or imprisonment may be so involved with or related
> to the act or proceeding as instigators or participants therein as to be liable for
> false imprisonment.  *See Wofford Oil Co. v. Stauter*, 26 Ala. App. 112, 154 So.
> 124 (1934); *Bank of Cottonwood v. Hood*, 227 Ala. 237, 149 So. 676 (1933); *J.J.
> Newberry Co. v. Smith*, 227 Ala. 234, 236, 149 So. 669, 671 (1933) ("[a] party
> may be guilty of false imprisonment in procuring an unlawful arrest by a police
> officer acting solely as a public officer, as where such party voluntarily aids and

---

[20]The defendant premises this defense on *Dolgencorp, Inc. v. Pounders*, 912 So. 2d 523, 527-28 (Ala. Civ. App.
2005).

abets the officer; or by false charges induces the officer to make an arrest, though the officer may act in entire good faith"); *Caldwell v. Standard Oil Co.*, 220 Ala. 227, 124 So. 512 (1929); *United States Cast Iron Pipe & Foundry Co. v. Henderson*, 22 Ala. App. 448, 116 So. 915 (1928); *Clifton v. Grayson*, 2 Stew. 412 (Ala. 1830); 32 Am. Jur. 2d False Imprisonment § 42, 44, 45 (1982). *See also, Casino Restaurant, Inc. v. McWhorter*, 35 Ala. App. 332, 46 So. 2d 582 (1950). However, it is well settled that liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on a person's good faith act of giving information to a police officer tending to show that a crime has been committed or on a person's good faith act of identifying one suspected of a crime, for such involvement in another's detention or arrest is not regarded in the law as an instigation of or participation in the detention or arrest. *See* 32 Am. Jur. 2d, False Imprisonment, § 45. In *Wofford Oil Co. v. Stauter*, 26 Ala. App. at 114, 154 So. at 126, the Court of Appeals noted the general rule:

> "If [the defendant's agent] merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would be the act of the officers and not of [the agent], although [the agent] had furnished the information leading to the investigation and arrest. On this question, however, there was . . . evidence tending to prove that [the agent] directed the arrest."

*Williams*, 679 So. 2d at 654.

As already noted, Special Agent Shockley signed the criminal complaint against Shanes in the District Court of Colbert County, Alabama, on August 10, 2004. It charged Shanes with reckless abuse of a protected person in violation of the Adult Protective Services Act of 1976. (Shanes Dep. at Ex. 4). Based on Agent Shockley's complaint, the Colbert County District Court issued a warrant for the arrest of Shanes on the same day. *Id.* at Ex. 6.

The undisputed evidence in this case reveals that Faulkner merely reported Mrs. Kimbrough's complaint that Shanes injured her to the Department of Public Health after investigating the claim. As already stated herein, there is no evidence of bad faith or malice in the record. Nothing disputes the fact that the report was prepared and submitted to comply with

17

state and federal regulations.  Similarly, there is no evidence that anyone at SunBridge instigated the arrest and prosecution of Shanes.  Accordingly, the motion for summary judgment as to the false arrest and imprisonment claim is due to be granted.

The defendant next argues that summary judgment is due to be granted on the plaintiff's false arrest and imprisonment claim because there was probable cause to support the arrest.  The plaintiff counters that when the facts are in dispute, the issue of probable cause must go to the jury.  (Plaintiff's Opp. at 11).  Other than citing two cases supporting her statement of existing law, the plaintiff does not articulate what probable cause facts are in dispute.  *Id*.

It is clear from the record that many facts are not disputed.  First, the plaintiff was attending Kimbrough and she changed her diaper immediately before she clocked out at 2:00 p.m. on February 19, 2004.  (Shanes Dep. at 53).  Immediately after Shanes left, Kimbrough activated her call light and complained to the responding attendant that her right arm was hurting. (Faulkner Dec. at ¶¶ 3 & 4 and Attached Exhibits).  Kimbrough had an open, bleeding skin tear and red discoloration on her arm.  (Faulkner Dec. at ¶ 7 and Kimbrough Interview Record). Kimbrough described the plaintiff as the person who changed her diaper and "handled her roughly and grabbed [her] right arm and pulled her real hard."[21]  *Id*. at ¶ 3.  Kimbrough also stated that after the plaintiff changed her diaper, she put her purse on her shoulder and said, "I got to go home."  *Id*. and Shanes Dep. at 53-54.

The existence of probable cause is an absolute bar to an action for false arrest.  *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d

---

[21]Although the plaintiff notes that Kimbrough only identified the plaintiff as a "tall slender black girl," she (the plaintiff) does not deny that she attended Kimbrough.  (Plaintiff's Opp. at 16).

1503, 1505-06 (11th Cir. 1990)); *see also Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994);

*Thomas v. Hamilton*, 611 So. 2d 1038, 1040 (Ala. 1992).  "'Probable cause exists where the facts

and circumstances within the officer's knowledge and of which he has reasonable trustworthy

information are sufficient to warrant a man of reasonable caution in the belief that an offense has

been or is being committed.'"  *Upshaw*, 650 So. 2d at 878, *citing Bush v. State*, 523 So. 2d 538,

543 (Ala. Crim. App. 1988) (quoting *Knight v. State*, 346 So. 2d 478, 481 (Ala. Crim. App.

1977)).  Additionally, "'[p]robable cause does not require overwhelmingly convincing evidence,

but only "reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225,

13 L. Ed. 2d 142 (1964), and probable cause "must be judged not with clinical detachment but

with a common sense view to the realities of normal life." *Wilson*, 757 F.2d at 1235.  When the

facts are not in dispute, whether probable cause existed is a question of law, and summary

judgment is appropriate.  *See White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986); *Wille v.

Raymond*, 487 So. 2d 1211, 1214 (Fla. App. 1986).'"  *Marx*, 905 F.2d at 1506.  Moreover, "'[i]t

is well settled that a general denial of guilt does not create a jury question on the issue of

probable cause.  *Pearson v. Delchamps, Inc.*, 578 So. 2d 1086 (Ala. 1991).'"  *Crown Cent. Petro.

Corp.*, 679 So. 2d at 656 (citing *Lindsey v. Camelot Music, Inc.*, 628 So. 2d 314, 315-16 (Ala.

1993)).

       Even examining the record in the light most favorable to the plaintiff as the court must do

at this juncture, there is nothing to indicate that the arrest was not supported by probable cause.

The plaintiff's denial simply does not overcome the existence of probable cause.  Nor does it

create a jury question sufficient to overcome the defendant's motion for summary judgment as to

this claim.[22]

### C.      Intentional Infliction of Emotional Distress

The defendant next asserts summary judgment is due to be granted on the intentional

infliction of emotional distress claim (Count Three) because the plaintiff has failed to

demonstrate the necessary "**extreme** and outrageous conduct which causes **severe** emotional

distress."  (Def. Brief at 23 (citing *Am. Rd. Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981))

(bold and underline in the defendant's brief).[23]  The plaintiff did not specifically retort the

defendant's contention in this regard in her opposition to the motion.  (See Plaintiff's Opp.).

To overcome the defendant's motion, the plaintiff must show that the alleged conduct

was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Inmon*,

394 So. 2d at 365.  The "emotional distress must be such that no reasonable person could be

expected to endure it."  *Id.*  Such claims are very limited and apply in only the "most egregious

circumstance."  *Thomas v. BSE Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993).

The defendant correctly noted that the Alabama Supreme Court has recognized the tort of

outrage in three main areas: (1) wrongful conduct within the context of family burials; (2) an

insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual

harassment.  *Id.* at 1044.  None of which are applicable in this case.

The defendant's conduct of notifying the Department of Public Health of the allegations

---

[22]In so finding, the court is not passing judgment on whether or not the plaintiff was guilty of the charged offense.  It is simply recognizing that probable cause did exist.

[23]This claim is more commonly known as outrage.

of abuse does not state a cause of action for outrage.  As already fully discussed, SunBridge was and is required to notify the appropriate state authorities of such allegations.  *See* 42 C.F.R. 483.13; ALA. CODE § 38-9-8 (1975); ALA. ADMIN. CODE  420-5-4-.05 & .06.  Nothing before the court supports a claim of outrage.  Accordingly, the defendant's motion is due to be granted as to this claim.

### D.     Negligence and Wantonness Claims

The defendant next asserts that summary judgment is due to be granted on the negligence and wantonness claims (Counts Four and Five) because the plaintiff cannot establish the requisite elements to support these causes of action.  (Def. Brief at 26-28).  The plaintiff once again did not specifically address this aspect of the defendant's motion.

### 1.     Negligence

To support her claim that the defendant acted negligently in reporting Kimbrough's complaint to the Department of Public Health, the plaintiff must show: (1) that the defendant owed the plaintiff a duty; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.  *AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998); *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992).  The defendant argues that it owed no duty to the plaintiff that was breached in this case.  (Def. Brief at 26).  The court agrees.

The plaintiff has failed to demonstrate what duty was owed by the defendant and how that duty was breached in this instance.  The defendant's compliance with state and federal regulations by reporting Kimbrough's complaint was reasonable, if not mandated, under the circumstances.  Additionally, there has been no demonstration that the investigation performed by the defendant's agent (Faulkner) was inappropriate or otherwise deficient.  Accordingly, the

defendant's motion for summary judgment is due to be granted on the negligence claim.

###    2.    Wantonness

"To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.  To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains."  *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citing *Smith v. Davis*, 599 So. 2d 586 (Ala. 1992)).  Because the plaintiff has failed to establish that the defendant owed her a duty and then breached the same, she cannot support her claim of wantonness.  Similarly, the court finds that the defendant's handling of Kimbrough's complaints by reporting them to State authorities is insufficient to support a claim for wantonness.  Accordingly, the defendant's motion for summary judgment is due to be granted on this claim as well.

## V.    CONCLUSION

Premised on the foregoing, the defendant's motions to strike (doc. 35 & 36) are due to be granted in part and denied in part and its motion for summary judgment (doc. 29) is due to be granted in its entirety.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 29th day of February, 2008.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge